**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY SUMMERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 97-1715 (EGS) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Anthony Summers brings this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents from the Federal Bureau of Investigation ("FBI") regarding Louis J. Russell, a former FBI agent.[1]  Currently pending before the Court are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment.  Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court determines that defendants have complied with FOIA by adequately searching for responsive records and properly invoking FOIA exemptions.  Therefore, for the reasons stated herein, defendant's motion for summary judgment is **GRANTED**, and plaintiff's motion for summary judgment is **DENIED**.

---

[1]  This case was originally combined with Civil Case No. 99-590, but was severed by the Court.  Order, Feb. 5, 2000.  Case No. 99-590 involves claims made by the same plaintiff against the Central Intelligence Agency.

**BACKGROUND**

In July 1995, plaintiff, an author on history and politics, filed a FOIA request with the FBI seeking all records pertaining to Louis James Russell, a former Special Agent of the FBI and an investigator for the House UnAmerican Activities Committee. Having failed to obtain the records he sought, plaintiff filed suit in this Court in July 1997.  In response to plaintiff's request, the FBI produced over 1100 pages of the requested material in December 1997, though portions of many documents were withheld pursuant to FOIA exemptions.

The parties continue the dispute the propriety of the claimed exemptions.  By agreement of the parties, and by stipulation approved by the Court, plaintiff selected a sample of fifty pages to be the subject of defendants' Vaughn Index in order for the Court to evaluate the usage of the FOIA exemptions. For those pages, defendants are claiming FOIA Exemptions 1, 2, 6, 7 (C) and 7(D) to justify redactions made in the processed documents.  *See* 5 U.S.C. § 552(b).  The parties' original motions for summary judgment were denied without prejudice in March 1999. Following plaintiff's filing of his amended complaint in April 1999, defendants renewed their motion for summary judgment and plaintiff renewed his cross-motion for summary judgment.[2]  In

---

[2]  Technically, the parties filed supplemental memoranda concerning their original motions.  Because the original motions have been denied, however, the Court construes the supplemental

2002, the parties filed supplemental memoranda concerning the impact of *Schrecker v. United States Department of Justice*, 254 F.3d 162 (D.C. Cir. 2001).  In their latest joint report, the parties informed the Court that document 17 was no longer in dispute, but that all other matters required resolution by the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate in a FOIA case when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In a suit brought to compel production under FOIA, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates "that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).

FOIA requires that federal agencies release all documents requested by members of the public unless the information contained within such documents falls within one of nine

memoranda as renewed motions for summary judgment.

exemptions.   5 U.S.C. § 522(a),(b).   These statutory exemptions must be narrowly construed in favor of disclosure.   *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).   The government bears the burden of justifying the withholding of any requested documents through agency affidavits, an index of withheld documents, or both.   *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir. 1980).

To sustain its burden, an agency may rely on declarations of government officials, which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.   *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).   Although this Court reviews agency FOIA determinations *de novo*, it must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   However, summary judgment is appropriate for a FOIA plaintiff when the requested material, "even on the agency's version of the facts, falls outside the proffered exemption." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

**ANALYSIS**

**I. Exemption 1**

FOIA Exemption 1 exempts from disclosure documents that are "specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense and foreign policy" and "are in fact properly classified pursuant to such order." 5 U.S.C. § 552(b)(1). An original classification authority is permitted to classify information only if it "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and . . . is able to identify or describe the damage." *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007) (quoting Exec. Order No. 12958 § 1.2(a)(4)). The Court "must accord substantial weight" to agency affidavits regarding national security concerns under Exemption 1. *Id.* at 374. Summary judgment is warranted on the basis of such affidavits "when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by . . . contrary evidence in the record." *Id.*

Defendants have applied Exemption 1 to portions of documents 1, 2, 7, and 8, using declarations from qualified officials to explain the basis for each decision. In documents 1 and 2, the redacted portion contains the name of a specific foreign government who was cooperating with the FBI. Defendants assert

that the cooperating foreign government does not wish its name to be revealed, and doing so would "constitute a serious breach to the long standing and productive association between" the agencies.  Defs.' Mot. for Summ. J., Statement of Facts ¶ 24(a). In documents 7 and 8, the FBI redacted the file number of a target of an intelligence investigation, claiming that revealing the number would threaten national security by revealing a specific intelligence method.  Information from document 7 that identifies the character of the case and reveals the identity of a specific target of an investigation has also been redacted. Defendants contend that this information would compromise national security interests by disclosing the investigation, the "nature, scope or thrust" of the investigation, or the method of gaining intelligence information, which in turn would allow countermeasures to be implemented by hostile services, and make future intelligence investigations more difficult.  Defs.' Mot. for Summ. J., Ex. H-7.

Plaintiff challenges the Exemption 1 withholdings on two grounds.  First, he argues that the defendants' justification of the redactions is vague and insufficiently detailed.  Second, plaintiff contends that contrary evidence exists that discredits any real national security threat from the release of the redacted information.

The FBI presented the declaration of FBI Special Agent

Sherry L. Davis as justification for withholding portions of
documents 1, 2, 7, and 8 under Exemption 1.  Plaintiff argues
that the Davis declaration does not meet the standard for
sufficient detail set in forth *Campbell v. Deptment of Justice*,
164 F.3d 20 (D.C. Cir. 1998).  As defendant points out, however,
the court in *Campbell* rejected the FBI's declarations because
they were apparently boilerplate rejection letters, without so
much as reference to the actual subject of the search.  *See id.*
at 30-31.  In contrast, the Davis Declaration provides, among
other things, an extremely detailed description of each document,
its classification level, the location on the document of each
deletion made, and a description (to the extent possible) of the
content of the deleted material.  The declaration also details
the FBI's contacts made with a foreign government concerning
release of the information in documents 1 and 2.  Finally, the
Department of Justice's Department Review Committee also reviewed
and affirmed all Exemption 1 classifications.

Plaintiff also argues that there is insufficient detail in
explaining the potential damage that would be caused by
disclosure of the information.  The Court, however, "must take
into account that any affidavit . . . of threatened harm to
national security will always be speculative to some extent, in
the sense that it describes a potential future harm."  *Wolf*, 473
F.3d at 374.  "Ultimately, an agency's justification for invoking

7

a FOIA exemption is sufficient if it appears logical or plausible." *Id.* at 374-75.  Under this standard, the affidavit is sufficiently specific.  *See id.* at 376-77.

Plaintiff contends that the government's declarations are insufficient because contrary evidence refutes the claim of a threat to national security.  Plaintiff argues that similar information to that withheld from documents 1, 2, 7 and 8 has already been released by the FBI, and therefore releasing this information could not reasonably be expected to cause damage to national security or foreign relations.  However, "the fact that some information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 835 (D.C. Cir. 2001).  Assessing harm to intelligence sources is the duty of the agency, and not the court.  *Id.*  Moreover, the agency's prior disclosures bolster its position that it has withheld only that information which it must.  *See id.*; *Whalen v. U.S. Marine Corps*, 407 F. Supp. 2d 54, 57 (D.D.C. 2005).  Therefore, defendants' usage of Exemption 1 was proper.

## II. Exemption 2

FOIA Exemption 2 exempts from disclosure information that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. §552(b)(2).  The threshold inquiry for this

exemption is whether the material withheld is "used for predominantly internal purposes." *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  If that condition is met, an agency may withhold the material "by proving that either (1) disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990).

The FBI invoked Exemption 2 to protect permanent source symbol numbers in documents 7, 12, 14, and 18 pertaining to confidential sources and a file number of such a source in document 4.  Plaintiff contends that neither file numbers nor source symbol numbers are sufficiently related to the internal practices of the agency and that this information is of significant public interest.

Plaintiff's arguments are without merit.  In *Lesar v. Department of Justice*, 636 F.2d 472 (D.C. Cir. 1980), the D.C. Circuit held that "informant codes plainly fall within the ambit of exemption 2."  *Id.* at 485.  "The means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest." *Id.* at 485-86.  Courts have also found that disclosure of such numbers would circumvent agency law enforcement efforts.  *See, e.g., Coleman v. FBI*, 13 F. Supp. 2d 75, 79 (D.D.C. 1998).

Therefore, defendants properly applied Exemption 2.

## III. Exemption 6

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy."  5 U.S.C. §552(b)(6).  The exemption is intended to cover government records that pertain to a specific individual.  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

The threshold question for this exemption is whether the information is contained in a personnel, medical, or similar file.  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).  If so, the court must "assess whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion."  *Id.*  To determine what constitutes such an invasion, the court must balance the individual's interest in privacy against the public's interest in disclosure.  *Id.*  The public interest in question is whether disclosure would "contribute significantly to public understanding of the operations or activities of government."  *Id.* at 33.

The FBI has redacted personal information pertaining to FBI agents and other third parties from documents 5, 10, 11 and 13 pursuant to this exemption.  Plaintiff challenges the redactions on two grounds.  First, he argues that the public interest in

10

learning about Louis Russell outweighs any privacy interests on the part of the FBI agents or third parties.  Second, plaintiff contends that the FBI has not conducted an adequate search to determine whether or not the protected parties are still alive, arguing that if they are dead, their privacy interest is extinguished.

All of the documents at issue are taken from Russell's personnel file.  Thus, the threshold requirement for applying Exemption 6 is met.  The inquiry thus turns to whether substantial privacy interests are at stake and, if so, whether harm to these interests caused by disclosure would outweigh any public benefits flowing from the disclosure.  *See Ripskis v. HUD*, 746 F.2d 1, 3 (D.C. Cir. 1984).

**A. Balance of Interests**

**1. Document 5**

In document 5, the government redacted the name and specific personal information about a particular former FBI agent, and the names of other former FBI agents.  The particular agent was a close associate of Russell, and the redacted information includes details about that agent's duties at the FBI, family, resignation from the FBI, and subsequent employment.

As an initial matter, plaintiff contends that the identity of the particular FBI agent can be deduced from the document and that this individual is a "public figure" and therefore has a

11

diminished privacy interest.  The possibility that plaintiff has determined the identity of the agent, however, does not undermine that agent's privacy interests.  *See Weisberg v. DOJ*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Moreover, plaintiff has failed to identify any public interest in knowing the names of the FBI agents redacted from this document.  Plaintiff argues only that knowing the names of the FBI agents in question would enable him to contact them and seek more information about Russell.  This is insufficient because the operative inquiry in determining whether disclosure of a document implicating privacy issues is warranted is the nature of the requested document itself, not the purpose for which the document is being requested.  *See Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).  Releasing the names of these agents would not shed light on the agency's performance of its statutory duties, which is the recognized public interest under FOIA.  *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773-75 (1989).  Therefore, the agents' privacy interests take precedent with no public interest in disclosure.  *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("something, even a modest privacy interest, outweighs nothing every time").

## 2. Document 10

In document 10, the government redacted the name of a third

party who provided the FBI information regarding Russell's death and specifically asked to have his name protected.  Because this individual requested his name be kept a secret, the privacy interest involved is high.  Plaintiff contends that there is great public interest in speaking with this person, and doubts that this person still expects confidentiality after 25 years. Plaintiff further argues that the public interest in disclosure outweighs any potential privacy interest.  Plaintiff's argument fails for the same reasons discussed in reference to document 5. Tracking down the individual who notified the FBI of Russell's death will not shed light on the FBI's performance of its statutory duties.  Therefore, the balance tips in favor of this individual's privacy interests.  *See id.*

### 3. Document 11

In document 11, defendants redacted the name and business affiliation of a third party that was interviewed by the FBI regarding leaks of sensitive information from the FBI to his business organization.  The government also redacted the names of his employees, and the name of a second third party who was mentioned during the course of a conversation.  Plaintiff contends that this information primarily relates to the same "public figure" he believes is the subject of document 5, and again argues that if he is correct, then there is no privacy interest at stake.  Plaintiff's argument fails here as well.  *See*

*Weisberg*, 745 F.2d at 1491.

Plaintiff has also failed to identify a public interest in releasing the names of the other individuals withheld in this document.  The names in document 11 concern an investigation into leaks of sensitive information from the FBI into a particular organization.  The individuals named in connection with these alleged leaks have a significant privacy interest in remaining anonymous in this context.  *See Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It goes almost without saying, moreover, that individuals other than [the subject of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct.").  For these reasons and the reasons articulated under document 5, the privacy interests at stake carry the day.

### 4. Document 13

In document 13, the redactions identify a third party who was involved in a "particularly sensitive incident," which if disclosed, would cause public humiliation for that party according to defendants.  The third party was a close personal associate of Russell.  Plaintiff does not specifically address document 13 and presents no evidence as to the public interest at stake in disclosure of the redacted information.  Therefore, the privacy interests are sufficient to withhold disclosure.

14

### B. Adequacy of FBI's Search

With regard to the documents withheld under Exemptions 6 and 7(c), plaintiff raises two objections to the adequacy of the FBI's search methods. First, plaintiff alleges that the FBI has not adequately searched for a manuscript referenced in one of the released documents. Second, plaintiff contends that the FBI has not taken reasonable measures to determine whether the FBI agents in question have died.

#### 1. Russell's Manuscript

Document 10 states that at the time of Russell's death, he was "in the process of collecting material and planned to write a book about the FBI." Plaintiff claims that because the FBI has not provided this manuscript, its search is inadequate. However, agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *See Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Plaintiff has made no showing that this manuscript actually exists or that the agency's search was conducted in bad faith. A requestor's mere "speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Id.* at 1201. Therefore, plaintiff's argument is rejected.

## 2. Determination of Death

Defendants concede that an individual's privacy interest is diminished at death, and contend that the FBI has released the names of agents known to be deceased.  Plaintiff contends that the FBI has not conducted an adequate search to determine whether other FBI agents have also died.

This Circuit has "recognized that the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased." *Davis v. DOJ*, 460 F.3d 92, 98 (D.C. Cir. 2006).  "The fact of death, while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information." *Id.* "Consequently, without confirmation that the government took certain basic steps to ascertain whether an individual was dead or alive," the court is "unable to say whether the government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue." *Id.*

"The government's obligation in this regard is to make a reasonable effort to ascertain life status." *Id.*  The relevant inquiry for the Court is "whether the government has made reasonable use of the information readily available to it, and whether there exist reasonable alternative methods that the government failed to employ." *Id.*  The Circuit emphasized though, that "there is no bright-line set of steps for an agency

to take in this situation," and the "adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Id.* at 105.

Here, defendants determined the life status of named agents by using the agency's "100-year rule," the *Who Was Who* publication, the institutional knowledge of employees, and prior FOIA requests. Defs.' Resp. to Pl.'s Supp. Mem., Aug. 21, 2002, at 4. In *Davis*, the D.C. Circuit concluded that the FBI's use of these same methods to determinate life status was not adequate. *Davis*, 460 F.3d at 98-103. On the other hand, in *Schrecker v. Department of Justice*, 349 F.3d 657 (D.C. Cir. 2003), the court concluded that usage of these same methods *was* adequate. *Id.* at 663-65; *see Davis*, 460 F.3d at 103.

The difference in outcomes is explained by the difference in relevant circumstances. In *Davis*, the FOIA request was a request for audiotapes and there were only four responsive documents and two names at issue. *Davis*, 460 F.3d at 104. A more extensive search regarding two individuals would not be unduly burdensome. *Id.* In *Schrecker*, by contrast, the FOIA request was a request for documents and there were thousands of responsive documents and over 100 names at issue, so requiring additional searches would be unduly onerous. *Id.*; *Schrecker*, 349 F.3d at 664.

This case is closer to the one in *Schrecker* because plaintiff's FOIA request is one for documents, there are over

17

1100 responsive documents, and there are likely many third-party named individuals whose privacy is at issue.  Therefore, the Court concludes that the FBI's life status determination procedures were adequate.  *See Davis*, 460 F.3d at 104.

**IV. Exemption 7(C)**

Records or information compiled for law enforcement purposes can be withheld under Exemption 7(C) if those records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The government invoked this exemption to redact information in Documents 2, 4, 6, 9, 15, 17, 18, 19, and 20.  The names of FBI Special Agents were redacted in documents 2, 15, 18, 19, and 20.  In document 4, the government redacted the name and source number of an individual who was of investigative interest to a third party, as well as the names of third parties who were associated with the person under investigation.  In document 6, the government redacted the name and job position of an FBI informant.  The redactions in document 9 are the names of an FBI informant, and a third party about whom the informant was providing information.  In documents 18, 19 and 20, individuals of investigative interest to the FBI have been redacted.  As stated by the parties, document 17 is no longer at issue.

The threshold question under Exemption 7 is whether the records were compiled for law enforcement purposes.  "A record is

considered to have been compiled for law enforcement purposes if it was created or acquired in the course of an investigation related to the enforcement of federal laws and the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

This case involves the FBI, an agency whose principal function is law enforcement. Thus, the defendants' burden is "less exacting" than if it was not a law enforcement agency. *Id.* After the agency first demonstrates a legitimate basis for investigation, the burden shifts to the requester to produce evidence that the asserted law enforcement rationale was merely pretextual. *Id.*

According to defendant, the records in question were generated in the course of investigations conducted by the FBI with regard to treason (document 2), domestic security (documents 15 and 17), foreign counterintelligence (document 18), interception of communications (document 19), and surveillance of a person of investigative interest (document 20). Documents 4, 6, and 9 were cross-referenced with Russell's personnel file, but they originated from the main files of other subjects and concern the unauthorized use of a telephone, surveillance in connection with a law enforcement operation, and the credibility of a

detective who testified before a grand jury in a case involving domestic security.  Plaintiff has not challenged the agency's law enforcement rationale nor asserted any claim of pretext.  Therefore, the agency's initial Exemption 7 burden is satisfied.

While its language is similar to Exemption 6, Exemption 7(C) places an even lower burden on the agency to justify withholding information.  Given the strong privacy interests inherent in law enforcement records, the D.C. Circuit has held that "categorical withholding" of information that identifies individuals in law enforcement records will ordinarily be appropriate.  *Safecard Servs.*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).  The Circuit also held that "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *Id.*  No such accusations are made in this case, and no "compelling evidence" has been presented to compel the disclosure of the identities of individuals of investigative interest, informants, or third parties.

While the names of FBI agents are not categorically exempt from disclosure, their privacy interests still remain high.  *See Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980).  Absent any allegations that the agents acted improperly, their privacy interests outweigh any need to know their identifies.  *See*

*Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 26 (D.D.C. 2002);
*Blanton v. DOJ*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999).  Plaintiff
does not allege that the named FBI agents acted improperly.
Without such allegations, the individuals' privacy interests
substantially outweigh any public interest in the disclosure of
their names.  Therefore, defendants properly applied Exemption
7(C).

## V. Exemption 7(D)

Exemption 7(D) "provides protection for records or
information compiled for law enforcement purposes which could
reasonably by expected to disclose the identity of a confidential
source, including a state, local or foreign agency or authority
or any private institution which furnished information on a
confidential basis."  5 U.S.C. § 552(b)(7)(D).  This is the most
comprehensive protection of all of FOIA's law enforcement
exemptions.  "[A] source is confidential within the meaning of
Exemption 7(D) if the source provided information under an
express assurance of confidentiality or in circumstances from
which such an assurance could be reasonably inferred."  *DOJ v.
Landano*, 508 U.S. 165, 172 (1993).  Source confidentiality is
determined on a case-by-case basis and no presumption of
confidentiality is afforded.  *Id.* at 175.  Unlike the other
Exemptions, 7(D) does not require a balancing of public interest.
Rather, the propriety of the exemption depends upon the

circumstances under which the information was provided, not on the public interest in disclosure.  *See Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994).

The government applied Exemption 7(D) to redact the source symbol number and name of a confidential informant in document 18.  According to the Second Davis Declaration, all symbol numbered informants operate under an express assurance of confidentiality in exchange for the information they provide. Defs.' Opp. to Pl.'s Mot. for Summ. J., 2d Decl. of Sherry Davis. This evidence is sufficient to meet the agency's burden of demonstrating confidentiality.  *See Coleman v. FBI*, 13 F. Supp. 2d 75, 81 & n.11 (D.D.C. 1998).  Therefore, defendants properly applied Exemption 7(D).

## VI. Congressional Records

The FBI withheld document 16 on the grounds that it is congressional information and therefore exempt from disclosure under FOIA.  Plaintiff challenges this assertion, stating that the document in question has become an agency record and is now under the exclusive control of the FBI.  The document is a one-page transcript of hearings conducted by the House UnAmerican Activities Committee.

In order for a document to be subject to FOIA disclosure, it must be an "agency record."  5 U.S.C. § 552(a)(4)(B).  "A document is an 'agency record' if (1) an agency either creates or

obtains the requested materials, and (2) the agency is in control of the requested materials at the time the FOIA request is made." *United We Stand America v. IRS*, 219 F. Supp. 2d 14, 16 (D.D.C. 2002) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 144-45 (1989)). "To determine control, the Court must undertake a fact-based inquiry to discern, based upon the totality of the circumstances, who intended to control the records in question." *Id.* "The central question is whether, considering all of the circumstances of the case including, of course, physical possession, the records at issue are subject to the free disposition of the agency." *Id.* at 16-17. The burden rests with the agency to demonstrate that the materials sought are not "agency records." *Id.* at 16.

In *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), the court determined that Congress intended for the document to remain secret and in control of Congress. *Id.* at 348. As in *Goland*, the transcript sought here is labeled "Executive Session" which indicates it was closed to the public and is intended to be secret. *See id.* at 347. The cover letter also specifically indicates that the FBI is "borrowing" the document and Congress expects that it will be sent "back to the Committee." Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J at 25. Therefore, the document was properly withheld as it was not an agency record.

23

**CONCLUSION**

The Court concludes that defendants conducted an adequate search and that all of its withholdings were proper under FOIA. Therefore, defendant's motion for summary judgment is **GRANTED,** and plaintiff's motion for summary judgment is **DENIED.** An appropriate Order accompanies this Memorandum Opinion.


**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **May 24, 2007**

24